# APPEAL FROM THE DISCIPLINARY BOARD

APPELLANT: **Jeffery A. Savage DOC #196217**      DATE OF REPORT: **4/17/18**

ORIGINAL CHARGE: **Rule #1, Contraband**      DATE OF HEARING: **5/7/18**

CHARGE FOUND GUILTY OF: **Same**      LOCATION OF HEARING: **CBD**

BOARD MEMBERS: **LTC. Michael Sanders &**      SENTENCE: **Quarters Change Wolf-2**
**Classification, Tammy Hendrickson**      **Low-Privileged (Drug) Dorm**
COUNSEL: **Marvin Wallace DOC #112760**      SENTENCE IMPOSED: **Yes**
                                             PLEA: **Not Guilty**

## FACTS

On **April 15, 2018**, Offender Savage received a disciplinary report for allegedly violating **Rule #30-W**, **sexual assault**. This report states: ***See Exhibit "A", pg. 4.***

"The above offender is to be locked in admin. seg. pending investigation."

While in adm. seg., on **April 17, 2018**, Offender Savage received a **second** disciplinary report for allegedly violating **Rule #1, Contraband**. This report states: ***Exhibit "B", pgs. 5-7.***
"On the above date and time, I, Capt. Jones conducted a random drug test on Offender Jeffery Savage #196217. Offender Savage failed the first test with meth, and the urine was tested again and also failed for meth. The drug screen is attached to the DB report. **The urine was then properly packaged and sent to the lab for further testing.** Offender Savage was placed in Adm. Seg. on a Rule #1 and a Rule #30-W.

On **April 19, 2018**, Offender Savage was brought before the Disciplinary Board and advised that the disciplinary report **Rule 1, Contraband** (dated April 17th) was being **dismissed** and **replaced** with a **third** report. This report states: ***See Exhibit "C", pg. 8.***

"On the above date and time, I, Capt. Jones conducted a random drug test on Offender Jeffery Savage #196217. Offender Savage failed the test. Col. Trent Barton was notified.

On **April 27, 2018**, Offender Savage was brought before the Disciplinary Board and advised that the disciplinary report **Rule 30-W**, the alleged "sexual assault" was being **dismissed** because it was unsubstantiated. ***See Exhibit "A", pg. 4.***
On **May 7, 2018**, relative to disciplinary report **Rule #1, Contraband**, Offender Savage appeared before the Disciplinary Board with LTC. Michael Sanders, Board Chairman and Classification Officer, Tammy Hendrickson, Board Member. Offender Savage pled not guilty

Exhibit "A"
Pgs. 11-13

and the report was read into the record. Thereafter, Offender Savage submitted a typed motion to dismiss asserting two grounds for relief. *See Exhibit "D", pg. 9.*

Finally, the Disciplinary Board subsequently denied the motion to dismiss and, after deliberations, found Offender Savage guilty as charged and sentenced him to **"Quarters Change to Wolf-2, Low-Privilege (Drug) Dorm".** *See Exhibit "C", pg. 8.* This appeal follows.

### ARGUMENT: ISSUE NUMBER ONE

**The Disciplinary Board Erred When It Failed To Dismiss The Rule 1, Contraband, On Grounds That Captain Marcus Jones <u>Tampered</u> With <u>Evidence</u> And Then <u>Falsified</u> A <u>Second</u> Report To Cover-up. (Malfeasance & 6th and 14th Amendment Due Process Violations)**

As a starting point, Captain Jones's first report dated 4/17/18, states that Offender Savage failed the first test with meth, and the urine was tested again and failed for meth. Captain Jones then stated that the urine sample was **"properly packaged"** and **"sent"** to the lab for further testing. *See Exhibit "B". pgs. 5-7*

On 4/19/18, The lab results came back indicating that Offender Savage's urine tested **"negative"** for meth. Captain Jones then advised his immediate Supervisors (Assistant Warden Joseph Lamartiniere, Assistant Warden Kevin Benjamin, Assistant Warden Jimmie Smith, LTC. Trent Barton and Major Hooker) of Offender Savage's negative lab results. These supervisors then instructed Captain Jones to **"dismiss"** the **first** report and write a **second** report **"omitting"** any reference that Offender Savage's urine was **"properly packaged and sent"** to the lab for further testing. *See Exhibit "C", pg. 8.*

Finally, Offender Savage avers that Captain Jones and immediate Supervisors tampered with evidence and deprived Offender Savage of his constitutional right to a fair and impartial disciplinary hearing.

### ARGUMENT: ISSUE NUMBER TWO

**Captain Marcus Jones Conspired With Supervisors Assistant Warden Joseph Lamartiniere, Assistant Warden Kevin Benjamin, Assistant Warden Jimmie Smith, And Colonel Trent Barton To Dismiss The <u>First</u> Report And <u>Fabricated</u> The <u>Second</u> Report In <u>"Retaliation"</u> For Offender Savage Filing A Grievance For "Inadequate Medical Care". (1st and 14th Amendment Violations)**

After Captain Marcus Jones advised Offender Savage that he tested positive for Meth, he (Offender Savage) informed Captain Jones that he (Offender Savage) didn't use drugs, and has **never** tested positive for drugs the **25 plus years** of incarceration. Captain Jones responded, **"I believe you, Savage; but I'm just a "pawn" in this "scheme".** You (Offender Savage) got to get your business straight with Assistant Warden Joseph Lamartiniere, Assistant Warden Kevin Benjamin and Assistant Warden Jimmie Smith because they're **mad** about the

12

grievance you filed against the Treatment Center for inadequate medical care.

Finally, because the instant report was **fabricated** in **retaliation** for Offender Savage exercising his First Amendment Right to file grievances and access to court. Offender Savage requests the same be dismissed and that he be returned to quarters.

## RELIEF REQUESTED

1.) That a Declaratory Judgment and Injunctive Order issue;

2.) That Offender Savage's disciplinary hearing be remanded with instructions to dismiss the disciplinary report Rule #1, and RTQ with all rights and privileges;

3.) That Offender Savage be reimbursed with any and all loss wages and/or loss income, including but not limited to $100 per day for his wrongful confinement in Administrative Segregation; and

4.) That Offender Savage not be retaliated against for his good faith use of the disciplinary appeal process.

Jeffery A. Savage DOC #196217

**Date Disciplinary Appeal Placed In Prison Mailbox:**

MAY 11, 2018

cc:   John Bel Edwards, Governor
DOC Headquarters, Internal Affairs Division
James M. LeBlanc, Secretary DOC
Civil Service Commission, Baton Rouge Division
Federal Bureau of Investigations, Baton Rouge Division
District Attorney's Office (St. Francisville)
Sheriff's Department (St. Francisville)
WAFB, Channel 9 News, ATTN: Elizabeth Vowel
WBRZ, Channel 2 News, ATTN: Chris Nakamoto
Honorable Judge Brian Jackson, Middle District of Louisiana
file

# LOUISIANA STATE PENITENTIARY
## ANGOLA, LOUISIANA

## APPEAL DECISION

### DISCIPLINARY BOARD APPEAL NUMBER:

### LSP-2018-0160

| | |
|---|---|
| OFFENDER: | JEFFERY SAVAGE    196217 |
| HOUSING: | D FALCON 1 |
| COURT DATE: | 05/07/2018 |
| DATE OF REPORT: | 04/17/2018 |
| RULE VIOLATED: | RULE #1, CONTRABAND |
| PLEA: | NOT GUILTY |
| FOUND GUILTY OF: | RULE #1, CONTRABAND |
| SENTENCE: | CUSTODY CHANGE TO MEDIUM LOW PRIVILEGE DORM (CAMP C/WOLF 2) |
| IMPOSED / SUSPENDED: | IMPOSED |
| RESTITUTION: | NONE |
| DECISION DATE: | 05/31/2018 |
| APPEAL DECISION: | DENIED |

Appellant argues on appeal that the Board erred in failing to dismiss the report based on the reporting employee tampered with the urine sample, falsified documents and the lab results came back negative for meth. Appellant further argues on appeal that the report was written in retaliation for filing a grievance.

The arguments raised by Appellant are without merit. Appellant has provided no evidence to refute the charges against him. A review of the record reveals the Appellant provided nothing to corroborate his claims that the sample was tampered with or the report was falsified and issued out of retaliation. Furthermore, the record reveals no negative labs results were received in regards to this case. The Disciplinary Board found the report to be clear and precise and the reporting employee's account of the incident appropriately supports the violation and provides sufficient evidence to warrant the guilty verdict. There is nothing to indicate that the Board abused its' discretionary authority in this case. A review of the record reveals Appellant was afforded due process in both the hearing and the sentencing phases of the proceeding. The sanction imposed appropriately falls within the sentencing guidelines specified in the Disciplinary Rules and Procedures for Adult Offenders for Schedule B Violations. The sentence imposed is not excessive or unduly harsh. The Disciplinary Board decision is deemed appropriate as to the finding of guilt and the sentence imposed.

The issues raised by Appellant in this matter have been reviewed. Appellant was provided a due process hearing by the Disciplinary Board. The decision of the Disciplinary Board is deemed appropriate. Appellant has presented nothing which would justify reversal or modification of the decision rendered through the disciplinary proceedings.

The appeal is denied.

Darrel Vannoy
Warden

DV: llr

INSTRUCTIONS TO OFFENDER: You may appeal this decision to the Secretary of Corrections in accordance with the procedures outlined in Disciplinary Rules and Procedures for Adult Offenders. The Secretary will only consider appeals from the Warden, which resulted in the imposed or suspended sentences of one or more of the following penalties: 1) Disciplinary Detention; 2) Loss of Good Time; 3) Custody change from Minimum to Medium only if it involves transfer to another institution; 4) Custody Change to Maximum; or 5) Failure to Earn Incentive Wages.

If you are dissatisfied with this decision, indicate your desire to appeal below, date and sign the document and return the **WHITE** copy to the DISCIPLINARY APPEALS OFFICE within five (5) days of receipt of this decision.

☐     I am not satisfied with the decision of the Warden and wish to appeal to the Secretary.

DATE: _____     OFFENDER'S SIGNATURE:_____

Exhibit "B"
Pg. 14



John Bel Edwards
Governor

**JAMES M. Le BLANC**
Secretary

## State of Louisiana
### Department of Public Safety and Corrections

### DISCIPLINARY BOARD APPEAL

| | |
|---|---|
| **Appeal Number:** | LSP-2018-0160 |
| **Offender's Name:** | JEFFERY SAVAGE #196217 |
| **Offender's Counsel:** | CARTER |
| **Board Chairman:** | SANDERS |
| **Rule Violation:** | 04/17/2018 |
| **Disciplinary Board Action:** | 04/27; 05/07/2018 |
| **Appeal Decided:** | JUL 3 1 2018 |
| **Decision of the Secretary:** | 06-REJECTED    **Inst:** LSP |

The offender was convicted of violating Rule #1 (Contraband) resulting in a sentence of Quarters Change to Low Privileged Dorm, Wolf 2.

The Secretary will only consider appeals from decisions of the Warden that resulted in an imposed or suspended sentence of one or more specified penalties. The offender's sentence is not within the specified penalties. Therefore, making this appeal moot.

Appeal is Rejected.

James M. LeBlanc, Secretary
Public Safety and Corrections

Exhibit "C"
Pg. 15

Jeffrey Savage/#196217
Hickory-4, Bed 75
Angola, LA 70712

ARP-LSP-2017-2751
Originally REJECTED
1/10/18 Resubmitted 1/11/8

Date Submitted:_____12/26/17
Date of Incident Underlying Complaint_9/26/17
(Date kicked off NU2)

**This is a Request for Administrative Remedy Procedure**

**Statement of Case and Underlying Facts**

On Saturday, May 27, 2017, while trying to go to the Walnut-Hickory side prison canteen, I hyper-extended my legs because my feet sank into the extremely soft mud I had to leap over a water-filled ditch to go to the canteen. LSP EMS transported me to the Treatment Center because I was unable to stand and EMT Christine Darbonne initially believed both legs were broken as she described over the radio as such after arrival. An x-ray was on both legs did not immediately show what injury was suffered. LSP Dr. Bunch, however, admitted me to the REBJTC Nursing Ward 1.

On or about Tuesday, May 30, 2017, I was examined by Dr. Randy J. Lavespere who referred me to an ultrasound specialist at the New Clinic that morning because my legs had swollen at least twice their normal size and causing excruciating pain; I could neither stand nor walk. The ultrasound provided insufficient imagery to determine the type or extent of the injuries either.

On Wednesday, May 31, 2017, I was sent to UMCNO and more x-ray procedures were done on Thursday, June 1, 2017 from which a diagnosis of Bilateral Patellar Tendon Rupture in both knees extending from the inferior pole of the patella with medial and lateral retinacular tears was made on June 1, 2017. On 6/5/17, (eight days after suffering the injury), I went back to UMCNO to meet an orthopedic surgeon who explained that this operation needed to be performed as quickly as possible in order to obtain the best results for a full recovery and he would be the surgeon performing the operation to repair this injury. After several delays, my surgery was performed on June 8, 2017 and I was returned to LSP Nursing Ward 1 at the REBJTC.

On 7/12/17, the surgical staples were removed and I was instructed to stand *only when necessary* to get in and out of bed and to keep on the leg immobilizers to allow the tendons to properly heal. On 7/26/17, Dr. Matthew Robert Delarosa, M.D. issued a prescription for two bilateral hinge knee braces locked from 0-45° degrees to promote proper healing for these injuries. He also prescribed a sit-down rolling walker to be used during physical therapy to strengthen my quadriceps and hamstrings. Dr. Delarosa ordered physical therapy begin immediately in an associated diagnosis of S86.819D.

Instead, I received no bilateral hinge knee braces and after transferred to NU2, never received a single physical therapy session. In fact, Certified Nursing Practitioner, Cynthia Parks instructed me *against doctors orders* I was not supposed to do *anything* until the hinged knee braces arrived.

For the next five weeks—between 7/27/17 and 8/31/17 I waited for my hinged knee braces and never receiving them. I asked Nurse Cynthia Parks what the status was on the hinged knee braces and she assured me they were coming shortly. Following this conversation, I called my sister who informed me that something did not sound right about this scenario because after she had similar surgery, she had the physical therapy within days of the surgery. My sister called DPS&C to find out why I had not received this medical care, knee braces or physical therapy in more than a month when it is supposed to be provided as soon as possible after the 6/8/17 surgery. She was informed I would receive the knee braces on 9/7/17, noting they were ordered on 8/14/2017. Instead, on 9/7/17, I was scheduled to see a different doctor [Dr. Ronald Sylvester] who suddenly determined I no longer needed the hinge knee braces—despite never having them since being ordered.

On 9/14/17, I was discharged seven weeks after Dr. Delarosa ordered the hinge knee braces and having provided absolutely no physical therapy in the interim. I was given a walker by Dr. Cynthia Parks to walk a mile and a half to my new housing assignment area (on West Yard/Hickory-4). The walker I was given immediately broke because it was not designed to accommodate the weight of a 250 lb. man. At the time I was discharged, I could not stand or walk at all after 6 months of not using my legs. In fact, my quadriceps had become totally unresponsive and had to be shocked with an electrical stimulator, after finally being provided some physical therapy.

On 9/15/17, I returned the broken rolling walker to the REBJTC to central supply and I encountered Head of the Nursing, Sherwood Poret. At his point, my sister had re-contacted the medical department requesting that I be provided a wheelchair consistent with Dr. Delarosa's initial order that I not stand for long periods of time without the aid of knee hinge braces and to use the knee immobilizer to walk until they knee hinge braces arrived, noting I received a wheelchair for *only* two weeks, even though I could not stand without holding onto something. My legs, knees and feet were so swollen I could not wear a shoe.

Exhibit "D"
Pgs. 16-19

On 9/19/17, I was scheduled to see the physical therapist, Ms. Maria, and 9/21/17, I was finally provided my first instance of physical therapy. The following day, [9/22/17], I was placed on an emergency therapy session and I saw Sherwood Poret who claimed that I should be walking by now. Poret rushed me in to see Dr. Sylvester where I explained to him my situation with the excessive swelling and complications with the left leg [it was clicking and popping] and requested he order an x-ray to be sure there was no readily discernible problem (to which request he did acquiesce immediately). After the x-ray was taken and examined, Dr. Sylvester assured me there was no problem and that I wouldn't injure it by walking on it.

On 9/26/17, Sherwood Poret instructed Nurse Betty Taplin to confiscate the knee immobilizer and I told them both that Dr. Delarosa had instructed me to use them *until I felt comfortable* enough to move without them. I also saw Dr. Ronald Sylvester and asked if the knee hinge braces had ever been ordered and he said he didn't think so.

It is from this 9/26/17 disclosure that the hinge knee braces had *never even been ordered* which has prompted me to file this ARP complaint. At this present time, my legs, knees and feet stay swollen all the time and I still have no control of my legs, noting that my left patella tendon is presenting clear symptoms of post-surgery complications which are causing the "clicking," "popping," and overbearing pain, preventing me from standing or walking and preventing restorative therapy.

I was given no stipulations on my duty status for a bottom bunk, and was not even initially provided a mattress in the dormitory. After being released, my ankles, legs and feet stayed swollen. I was later interviewed by Nurse Practitioner Hillard, who ordered some embolistic stockings for swelling, which stockings were not received for 2-3 weeks. I still experienced significant swelling and nothing more has been done to alleviate the swelling; instead, I have been instructed to use ice packs (which have not been provided), because there was no ice in the dormitories because it was used up because it was still extremely hot and no ice was retrieved for this medical purpose.[1]

Given that the expected period for a one-tendon patellar surgical repair, would question Dr. Cynthia Parks' expectations that Offender Savage to be fully functional within 30 days (as evidenced by the thirty day duty status of no-duty and for access to a walker) after being discharged from the Nursing Ward, per Dr. Paul M. Tocé and Randy Lavespere (dated 9/14/17). The rehabilitation protocol is based upon the steps outlined with the guideline therein which starts immediately following surgery and not *four months* post-operative plan, as was done in this case!

My knees are in constant pain, swollen, and I have extreme difficulty trying to regain my full range of motion and strength in my quadriceps and hamstrings. I am unable to stand and walk properly; and the longer it takes the more risk my disability becomes permanent and irreversible, from substantial delay in initiating physical therapy.

The stockings eventually provided helps control some swelling in my legs; however, I still need obtain elastic knee sleeves made of neoprene rubber for support in my knees because my knees frequently buckle and I am limited in the exercise range of motion exercise I can do.

The injury was caused by the negligence of the department failing to provide a safe accessible route to the canteen. Additional negligence results from failing to provide hinged knee braces, wheelchair, and reasonable physical therapy immediately following the double patellar tendon rupture procedure or adequate accommodation and treatment after being discharged from the Nursing Unit.[2]

Therefore, the responsible DPS&C personnel, doctors and medical staff are liable for damages not only for the injury itself, but also for the pain, suffering, delay in rehabilitation and permanent disability caused by the failure to provide post-operative therapy and treatment causing permanent damage, suffering, and loss of mobility and enjoyment of life.[3]

---

[1]  Equally important, as stated in the Post-Operative Patellar Tendon Rupture treatment and management protocol, the prolonged immobilization causes stiffness, significantly decreases the strength of the quadriceps, and loss of the full knee flexion complicates the overall success of the surgical repair. That was the importance for the post-operative physical therapy which the recommended time span for one patellar tendon is six months depending on the surgery coupled with an aggressive approach to the recommended standard post-operative protocol following a successful surgery.

[2]  In addition to Department Regulation B-06-001, Health Care Policy – 02; Louisiana and federal law, DPS&C Department Regulations and Penitentiary Directives to inmates (such as and including LSA-Revised Statutes Art. 15:831(A) Medical Care of Inmates, clearly states in pertinent part:
"...unless the condition necessitating such treatment or organ transplant arises or results from an accident or situation which was the fault of the department or resulted from an action or lack of action on the part of the department."

[3]  Louisiana Administrative Code Title 22, Part III § 2909, Section N clearly forbids placing offenders in experimental testing programs; basically that is what LSP personnel, staff and other responsible parties did to Offender Savage post-operative the double patellar tendon rupture surgery, in violation of Department Regulation B-09-004, B-06-001, HC-02, LSA-Revised

In trying to follow Dr. Sylvester's advice to work my legs, I tried to walk and my legs were in a state of shock; my knees, feet and ankles swelled up and I informed the nurse who said she would contact "Dr." Cynthia Parks. Nurse Cynthia Parks appeared to be aggravated when informed and informed me that the swelling was to be expected; but, in her opinion I may have been too much.

On 9/11/17, my sister again called to find out what was the status on the braces and she was mendaciously informed they were "en route." Apparently, Cynthia Parks brought up and informed the other nurses that my sister had been calling and were all "aware of that shit!" The brace were never even ordered.

On 9/14/17, I was discharged from the NU2, and returned to Main Prison general population with a one (1) month duty status which expires on 10/14/17, after which my duty returns to a permanent duty status of Regular Duty. No hinged knee braces, despite now being on physical therapy. My legs knees, and feet are swollen to huge proportions and are causing constant pain, and I cannot even try to exercise them without excruciating pain and concomitant pain and additional swelling.

On 9/21/17, I was suddenly on callout for purported Physical Therapy purposes and informed I would not be seen again for a very long time. This contradicts what I was told prior to my release from the Nursing Ward that I would have to do my own Physical Therapy.

Pursuant to information gleaned from the Internet[4] printed out for me by my sister and an article dated 7/18/14 entitled "Patellar Tendon Rupture Treatment & Management, published by Christopher C. Annunziata, MD, describes the surgical procedure for repairing this rare injury.

## RELIEF REQUESTED

For relief, I request that I be afforded opportunity to be examined by an outside orthopedic surgeon so that he can examine my knees, provide a prognosis to full recovery, and to make expert recommendations as to controlling the swelling and pain, especially since to this date, Dr. Ronald Sylvester has never really physically examined my knees, legs, etc., and Dr. Sylvest has so far, only done what Cynthia parks has requested of him in my treatment

Second, that I be provided the elastic neoprene rubber knee braces/support sleeves indefinitely (as long as necessary to regain full range of motion and muscle strength)

Third, that written receipt of medical order showing that "hinged knee braces" were in fact ordered and that the cancellation date of the knee braces *be placed in the administrative record*.

Fourth, that I be provided physical therapy until my range of motion is acquired and the strength in my quadriceps and hamstrings is reasonably restored.

Fifth, that additionally surger(ies) be provided without delay if the operating surgeon determines additional surgery is necessary because of complications caused by responsible LSP personnel, medical staff, doctors, etc failure to follow post-operative protocol following double patellar tendon rupture procedures and post-operative physical therapy.

Sixth, that I be granted reasonable damages for unnecessary pain and suffering caused in the deliberate departure from double patellar tendon rupture procedure post-operative protocol and the residual and permanent disability that has resulted.

Seventh, that none of the medical or security personnel retaliate for my good faith use of the ARP system and all aspects of Louisiana Administrative Code, Title 22 § 325 be followed including all deadlines in ARP responses.

***Note that asking me to drop this ARP complaint will be construed as retaliation and will result in an additional ARP complaint against that individual(s) who asks such. I am asking for relief through the ARP system since informal requests have utterly failed. Please note that I have kept this complaint as short as possible while maintaining all the critical information underlying this grievance. It is impossible to shorten my complaint without jeopardizing failure to exhaust relevant claims.

Jeffrey Savage/#196217

---

Statutes Art. 15:831(B)(2).

4   http://emedicine. Medscape.com/article/1249472-treatment

### Requested Summarization on One Additional Page

Pursuant to Title 22 § 325(G)(1)(a)(iii), LSP Legal Programs Director has REJECTED ARP-LSP-2017-2751 with the following reason(s): "YOUR ARP IS BEING REJECTED DUE TO THE VOLUME IS TOO GREAT. YOU ARE ABLE TO RESUBMIT ONCE YOU SHORTEN YOUR ARP."

Your directive that I will be permitted "to resubmit once [I] shorten [my] ARP" is *not statutorily authorized* because it prevents me from providing "fair notice" required under both the state and federal Prison Litigation Reform Act to all the persons involved in my complaint and from which I intend to prosecute my civil action if the DPS&C fails or refuses to provide administrative relief.

Therefore, in trying to comply with the directive of which you sent a copy a quote from the Rule book Page 9, Chapter 3(1)(C), and which is statutory; I am resubmitting my original ARP, *plus one page* which is intended to summarize or clarify the complaint. Keep in mind that if LSP Legal Programs chooses to REJECT this resubmitted complaint merely because I cannot "SHORTEN [MY] ARP," without jeopardizing exhaustion of the claims I intend to bring into court, please be advised that Judicial Review will be sought challenging the DPS&C authority to REJECT an ARP merely due to the length of the complaint or even "due to the volume of attached material is too great." this is especially true since I have not **attached** any volume of material to my complaint, much less attachment that can reasonably be characterized as "too great." Moreover, as explained in my original submission:

> "***Please note that I have kept this complaint as short as possible while maintaining all the critical information underlying this grievance. It is impossible to shorten my complaint without jeopardizing failure to exhaust relevant claims.

I have reduced my original complaint from 5 to 3 pages without having to sacrifice submitting the facts, and one (1) page intended to summarize the entire complaint, with the original complaint intended to be available for the ARP Respondent for specific facts from which my complaint stems.

My complaint is that I was seriously injured because of the direct negligence of DPS&C failing to remove an obstruction which has continued to this date. I have suffered double patellar hyper-extension in my knees which required major surgery to correct. After my surgery was adequately performed the negligence of DPS&C has continued by refusing to provide hinged knee braces and physical therapy as originally prescribed. I have been put off the Nursing Unit without adequate ADA-necessary devices to assist my condition, and I am not receiving adequate follow-up care. Now I am being told that "according to protocol" I should be all healed up by now; but my injuries are not healing because DPS&C has steadfastly refused to provide the care my condition requires. This clarified complaint is urged as a combined federal (deliberate indifference to serious medical needs) and state tort (negligence and medical malpractice) which is a single claim that will be urged in the United States District Court Middle District of Louisiana under jurisdiction permitted pursuant to 28 U.S.C. § 1331(a), 1343, and 1367, which includes the federal court's supplemental jurisdiction.

Under 42 U.S.C. § 1997e, I am required to provide this institution "fair notice" of not only the events underlying the complaint, but reasonable notice of the persons who might be sued and the types of relief I will seek. That is why this complain was originally five pages—with no material attached thereto.

Therefore, I am seeking the declarative, injunctive and monetary relief explained in the text of the original complaint reproduced above.

This one page summarization and clarification should be accepted for review under ARP-LSP-2017-2751.

However, if this complaint is again REJECTED for the same or any other reasons which I can show a reviewing court is reasonably characterized as arbitrary, capricious, or characterized as an abuse of discretion, I will have satisfied my exhaustion requirements and nothing will prevent me from proceeding into a court of competent jurisdiction.

I would much rather prefer having the DPS&C review my complaint and see if an amicable resolution can be reached without the need for litigation; but, if my complaint is REJECTED despite my attempts to obtain such relief, I will be left with no other option but seeking judicial intervention.

I respectfully submit this single-page clarification and summarization and pray you ACCEPT this complaint for review through both steps of the procedure.

ARP-LSP-2017-2751
Originally REJECTED 1/10/18
Resubmitted 1/11/8

Jeffrey Savage/#196217

19

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT
INSTITUTION, L.S.P. ANGOLA   CBD   LIL

| 1. Name of Inmate Jeffery Savage | 2. Number 196214 | 3. Date of Incident 4/17/2018 | 4. Time of Incident Approx. 2:15 PM |
|---|---|---|---|
| 5. Place of Incident CBD | 6. Job Assignment (Inmate) No Duty | 7. Housing Assignment (Inmate) Hie 4 | |
| 8. Rule Violated CONTRABAND | 9. Rule Number #1 | | |

10. Description of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side if necessary).

ON THE ABOVE DATE AND TIME, I, Capt. Jones conducted a random drug test on offender Jeffery Savage #196217. Offender Savage failed the test. Col. Trent Barton was notified.

11. Inmate Placed in Admin. Seg.   X   YES   NO

12. Signature of Officer Reporting

| 13. Name, Title, Assignment (Print) Marcus Jones Captain, MPWY/CB/A TEAM |
|---|

| 14. Date of Report 4/17/2018 | 15. Time of Report 4:00 PM | 16. Report (copy) given to the above inmate by: | 17. Inmate Signature |
|---|---|---|---|

18. Plea by Inmate:   Not Guilty   Guilty     19. Verdict:   Not Guilty   Guilty

20. Date of Hearing: 5-7-18   4/27/18     21. Counsel Substitute: DOC#:   125211   112760

22. Motions:

23. Reasons for Disposition:
[ ] Report is clean and precise.  [ ] Lack of a credible defense/little or no defense.  [ ] Based on his statement.
[ ] The officer's version is determined to be more credible than the inmate's.  [ ] Pled guilty/accepted guilty plea.
[ ] Only defense is denying contents of report..  [ ] The inmate presented no evidence to refute the charges.
[ ] The investigative officer's testimony was deemed more truthful and accurate than the inmate's.  [ ] Plea bargain
[ ] The inmate's demeanor led the board to believe that the inmate's testimony is untrue.
[ ] Other

24. Reasons for Sentence:
[ ] Seriousness of offense.  [ ] The need to protect the institution, employee, or other.
[ ] Poor Conduct record. A total of _____ rule violation(s). A total of _____ Schedule B violations since _____
A total of _____ # _____ rule violations since _____
[ ] Other _____

25. Sentence: Quarters change   Wolf-2 low Privelge Dorm

Suspended [ ]   Days
Imposed [✓]

26. Sentence:

Suspended [ ]   Days
Imposed [ ]

27. DISCIPLINARY BOARD.
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER) _____ LTC

MEMBER   Tammy Hendrickson

Exhibit "E"
Pg. 20

## DISCIPLINARY REPORT

**INSTITUTION:** Louisiana State Penitentiary        CBD 4L

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Jeffery Savage | 196217 | April 15, 2018 | Approx. 1:00 a.m. |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| Main Prison Hickory 4 | No Duty | Main Prison Hickory 4 Dormitory |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| General Prohibited Behavior | #30-W |

10. Description of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

The above offender is to be locked in admin seg pending investigation.

11. Inmate Placed in Adm. Seg. ☐ Yes ☐ No

| 12. Signature of reporting employee | 13. Name, Title, Assignment |
|---|---|
| | Joseph McNeely, Lieutenant, Investigative Services |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: |
|---|---|---|---|
| April 18, 2018 | 9:?0 a.m. | | |

18. Plea by Inmate: ☒ Not Guilty ☐ Guilty    19. Verdict: ☒ Not Guilty ☐ Guilty

20. Date of Hearing: 4/21/18        21. Counsel Substitute: DOC#: 112760

22. Motions: _Defer to Investigative Services_

### 23. Reasons for Disposition:

☐ Report is clear and precise.        ☐ Lack of credible defense/ little or no defense.        ☐ Based on his statement.

☐ The officer's version is determined to be more credible than the inmate's.        ☐ Plead guilty/ accepted guilty plea.

☐ Only defense is denying contents of report.        ☐ The inmate presented no evidence to refute the charges.

☐ The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.        ☐ Plea bargain.

☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.

☐ Other _____

### 24. Reasons for Sentence:

☐ Seriousness of offense.        ☐ The need to protect the institution, employees, or other.

☐ Poor Conduct record. A total of _____ rule violation(s). A total of _____ Schedule B violations since _____.
A total of _____ # _____ rule violations since _____.

☐ Other _____

25. Sentence: Dmiss'd        Suspended ☐ _____ Days
                                                Imposed ☐

26. Sentence: Pen Investigation        Suspended ☐ _____ Days
                                                Imposed ☐

27. **DISCIPLINARY BOARD:**
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates

_____
CHAIRMAN (DISCIPLINARY OFFICER)

_____
MEMBER

Exhibit "F"

21

Form C-02-007-A
26 June 2009

## REQUEST FOR DRUG AND ALCOHOL TEST

| ...der's Name: Jeffery Savage | DOC #: 196212 | Housing Assignment: Hic 4 | Job Assignment: N0 |
|---|---|---|---|

| Request Made By: Col TRENT BARTON | Date 4-17-18 | Time 2⁰⁰/pm |
|---|---|---|

| Type of Request: TOX Cup 2 | Agent Suspected: THC, OPI, MET, COC, Amf, Other |
|---|---|

| Supervisor Receiving Request: | Date: 4-17-18 |
|---|---|
| Test Approved By Col TRENT BARTON | Date: 4-17-18 |
| Sample Obtained By Marcus Jones | Date: 4-17-18 |
| Sample Witnessed By: Marcus Jones | Date: 4-17-18 |

Action Leading to Request

☐ Reasonable suspicion based on the following:_____
☐ Drugs/Alcohol found in offender's possession or immediate area of control.
☐ Offender in possession of, or using what appears to be illicit drugs or alcohol, but staff was unable to obtain a sample.
☒ Random or routine basis when offender returns from or participates in an escorted absence, work release program or other temporary release program (i.e., an outside work detail or job, or other program, work or recreational activity outside the institution.)
☐ When there is a significant reading for an illegal substance as a result of being scanned via the Ionscan narcotics system
☐ Part of a Drug and Alcohol Testing Program conducted on the unit's entire population or caseload or on an identifiable subgroup of offenders or other acceptable method of random selection as determined by the Unit Head
IDENTITY OF GROUP OR SUBGROUP:

### COMPLETE THIS SECTION FOR INITIAL TEST:

| Type of Test: TOX Cup 2 | Date: 4-17-18 |
|---|---|
| Lot#: L7463 | Exp. Date: 11/18 |
| ...conducted by (print): Marcus Jones | Time test conducted: 2:15 pm |

Test Cup Checklist:

1. Temperature: ☒ Within 90° - 100° for 4-6 minutes    ☐ Outside of range (sample unacceptable)
   Any other observations:
2. Test Valid: ☒ All drugs    ☐ No control line (re-test using new Test Cup ☐)

| Test Cup Results: ☐ Negative    ☒ Positive | If positive indicate- Drug Type: ☐THC ☐OPI ☒MET ☐COC ☐AMP ☐OTHER |
|---|---|
| ☐ Un-Adulterated ☐ Adulterated | If Adulterated- Type    ☐ ph/ox    ☐ Cr/Ni |

| Breathalyzer: ☐ Negative    ☐ Positive | If positive indicate reading |
|---|---|

Signature of Staff Conducting Test: _[signature]_

### IF POSITIVE, COMPLETE THIS SECTION FOR SECOND DRUG TEST, ADULTERATED TEST OR FOR CREATININE USE AFTER THE FOUR HOUR TIME LAPSE:

| Type of Test:: TOX Cup | Date: 4-17-18 |
|---|---|
| Lot#: L7463 | Exp. Date: 11/18 |
| Test conducted by(print): TRENT BARTON Col | Time test conducted: 2 25/pm |

Test Cup Checklist (if applicable):

1. Temperature: ☒ Within 90° - 100° for 4-6 minutes    ☐ Outside of range (sample unacceptable)
   Any other observations:
2. Test Valid: ☐ All drugs    ☐ No control line (re-test using new Test Cup ☐)

| Results: ☐ Negative    ☒ Positive | If positive indicate- Drug Type: ☐THC ☐OPI ☒MET ☐COC ☐AMP ☐OTHER |
|---|---|
| ☐ Un-Adulterated ☐ Adulterated | If Adulterated- Type    ☐ ph/ox    ☐ Cr/Ni |

...ature of staff conducting test: Col _[signature]_

| Sample secured in refrigerator by (if applicable): | Date: 4-17-18 |
|---|---|

Exhibit "G"
Pg. 22

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT
INSTITUTION: L.S.P. ANGOLA

| 1. Name of Inmate Jeffery Savage | 2. Number 196214 | 3. Date of Incident 4/17/2018 | 4. Time of Incident Approx. 2:15 PM |
|---|---|---|---|
| 5. Place of Incident CBD | 6. Job Assignment (Inmate) No Duty | | 7. Housing Assignment (Inmate) Hic 4 |
| 8. Rule Violated CONTRABAND | | 9. Rule Number #1 | |

10. Description of Incident (Include all relevant information – unusual inmate behavior, staff witnesses, physical evidence & position, immediate action including use of force, use other side if necessary)

ON THE ABOVE DATE AND TIME, I, Capt. Jones conducted a random drug test on offender Jeffery Savage #196217. Offender Savage failed the first test with meth, the urine was tested again and also failed again for meth. The drug screen is attached to the DB report. The urine was then properly packaged and sent to the lab for further testing. Offender Savage was placed in Adm. Seg. on a rule #1 and a rule #30W.

| 11. Inmate Placed in Adm. Seg. | X YES | NO |
|---|---|---|

| 12. Signature Reporting employee | | 13. Name, Title, Assignment (Print) Marcus Jones Captain, MPWY/CB/A TEAM |
|---|---|---|
| Date of Report 4/17/2018 | Time of Report 4:00 PM | 16. Report (copy) given to the above inmate by | 17. Inmate's Signature |

| 18. Plea by Inmate | Not Guilty | Guilty | 19. Verdict | Not Guilty | Guilty |
|---|---|---|---|---|---|

20. Hearing Information

21. Motions

22. Reasons for Disposition
[ ] Report is clear and precise
[ ] The officer's version is determined to be more credible than the inmate's
[ ] Only defense is denying contents of report
[ ] The investigative officer's testimony was deemed more truthful and accurate than the inmate's
[ ] The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
[ ] Other
[ ] Lack of a credible defense/little or no defense
[ ] Based on his statement
[ ] The inmate presented no evidence to refute the charges
[ ] Pled guilty/accepted guilty plea
[ ] Plea bargain

23. Reasons for Sentence
[ ] Seriousness of offense
[ ] Poor Conduct record. A total of _____ rule violation(s) A total of _____ # _____ rule violations since _____
[ ] The need to protect the institution, employee, or other
[ ] Schedule B violations since _____
[ ] Other

25. Sentence    Dismiss Report
Suspended [ ]
Imposed [ ]     Days

26. Sentence
Suspended [ ]
Imposed [ ]     Days

DISCIPLINARY BOARD
Cost may be imposed for any property loss, damage, or medical expense necessioned through the fault of an inmate who in so causing the loss, damage or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER)

MEMBER

Exhibit "H"
Pg. 23

**LOUISIANA STATE PENITENTIARY**
**MAIL/PACKAGE DEPARTMENT**
**ANGOLA, LA. 70712**

TO: Jeffery Savage DOC 196 217

LOC: D Fal 1

FROM: B-Line Mail/Package Department

DATE: 8/9/18

RE: **Hobbycraft Property**

Per LSP Offender Posted Policy #028, Section C #5, with the exception of offenders transferred to the R.E. Barrow Treatment Center as a patient or to another dormitory on the same yard, offenders being transferred to any location will lose his hobby box. Under these circumstances, the offender may apply for a hobby box in his new area of assignment and the offender's hobbycraft tools, materials, and items will be stored until he is eligible for a box in his new housing assignment. (Exception: In cases where the offender is being transferred to maximum custody, the provision in Item 4 will apply.)

Item 4 states in part, "if the offender is assigned a hobbyshop box, the offender's personal property located in the hobbyshop box will also be handled in accordance with Sections 1 through 3 above. If the offender is subsequently transferred to another unit for disciplinary reasons, he must send his hobbycraft materials home, at his own expense, until he obtains a hobby box at his new location. Property not mailed out within thirty (30) days shall be considered abandoned.

The Mail/Package Department is currently holding hobbycraft property that you are not allowed to have at your current housing assignment. In accordance with this policy, you have thirty (30) days from the date of this notice to provide an address and postage costs to mail these items home. You may submit a drawslip for postage. Items that cannot be mailed due to size or weight may be picked up at the Front Gate, Monday-Friday 8:00 am-4:30 pm. If you wish to have your items picked up, you must submit a written request detailing date of pick-up and the name of the individual who will be picking up the property. If you fail to either provide an address, postage, drawslip, or a written pick-up request within thirty days, this property will be considered abandoned and disposed of in accordance with policy.

Mail/Package Department

Exhibit "I"
Pg. 24